IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES MASON                                                                                            PLAINTIFF

        v.                    Civil No. 6:13-cv-06110

CORIZON, INC.; NURSE ARIC
SIMMONS; DR. JOHN ANDERSON;
DR. JEFFERY HUGGETT; NURSE JANE DOE;
and WANETTA CLOWERS                                                                            DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

      This is a civil rights action filed by the Plaintiff, James Mason, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections Ouachita River Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

      Currently before me is Defendants Corizon, Inc. and Aric Simmons's Motion for Summary Judgment (ECF No. 17), and Defendant Wanetta Clowers's Motion for Summary Judgment (ECF No. 25). Plaintiff responded. ECF Nos. 26, 31, 34, 36. Defendants replied. ECF No. 32. After careful consideration, the undersigned makes the following Report and Recommendation.

**I.      BACKGROUND**

      During the time at issue here Plaintiff was incarcerated in the Arkansas Department of Corrections Diagnostic Unit in Pine Bluff ("Diagnostic Unit") and the Ouachita River Unit in

1

Malvern, Arkansas ("ORU"). Plaintiff filed his Complaint on October 3, 2013. In his Complaint, Plaintiff named Corizon, Inc., Nurse Aric Simmons, Dr. John Anderson, Dr. Jeffery Huggett, Nurse Jane Doe, and Wanetta Clowers. ECF No. 1. On October 29, 2013, the Court ordered service on all Defendants in care of the law firm Humphries and Lewis. ECF No. 5. Humphries and Lewis accepted service on behalf of Corizon, Inc. and Aric Simmons. ECF Nos. 10, 11. Humphries and Lewis were unable to accept service on behalf of the other named Defendants because they were either no longer employed or had never been employed by Corizon, Inc. Humphries and Lewis provided the last known address of the former employees, Dr. Anderson and Wanetta Clowers and also gave four names in an effort to help identify Defendant Jane Doe. Humphries and Lewis had no last known address for Defendant Huggett. ECF No. 14. Subsequently, the Court ordered Defendants Anderson and Clowers be served at the addresses provided by Humphries and Lewis. The Court also directed Plaintiff to provide additional information to aid the Court in serving Defendant Huggett and identify Defendant Jane Doe. ECF No. 15. Defendant Clowers was subsequently served, and Humphries and Lewis entered an appearance on her behalf. ECF No. 23. On January 15, 2014, Plaintiff informed the Court of the information he possessed regarding Defendant Huggett and also stated he needed additional discovery from Defendants to identity Defendant Jane Doe. ECF No. 30. On January 31, 2014, the summons issued to Defendant Anderson at his last known address was returned unexecuted. ECF No. 33. Plaintiff has never informed the Court of any information he learned through discovery to identify Defendant Jane Doe or provided the Court with accurate addresses for service on Defendants Huggett and Anderson.

In his Complaint, Plaintiff alleges his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendants denied him medical care related to colon cancer. Defendants[1] argue all of Plaintiff's claims should be dismissed for failure to properly exhaust pursuant to the Prison Litigation Reform Act. Plaintiff responded arguing that he did exhaust his claims.[2] Defendants replied.[3]

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but

---

[1] While Defendant Clowers filed a separate Motion for Summary Judgment, her arguments are the same as Defendants Corizon, Inc. and Simmons. ECF Nos. 18, 27. Therefore, the Court will address the Motions together in this Report and Recommendation. Any reference to "Defendants" shall be to Clowers, Corizon, Inc., and Simmons collectively.

[2] Because Defendants' Motion for Summary Judgment is based on exhaustion arguments the Court need not address the merits of Plaintiff's claims in this Report and Recommendation. Instead, the Court will enumerated the pertinent grievance history provided on the summary judgment record and analyze the exhaustion arguments presented.

[3] Defendants assert a procedural argument in their Reply regarding Plaintiff's failure to file a statement of disputed facts in response to Defendants' Motions for Summary Judgment. The Court granted Plaintiff's Motion to Supplement his Response with a Statement of Disputed Facts on May 6, 2014. Therefore, this argument is moot. Further, the Court will liberally construe Plaintiff's pleadings at this stage. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment).

the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

   1.   <u>Defendants not served</u>

It is Plaintiff's responsibility to provide the Court with an address for proper service on defendants. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). It has been approximately eight months since Humphries and Lewis informed the Court they did not have an address for Defendant Huggett, and the summons for Defendant Anderson was returned unexecuted. Plaintiff has not provided the Court with any additional addresses or identifying information to use in serving either Huggett or Anderson.

For the foregoing reasons, I recommend Defendants Huggett and Anderson be dismissed from this action without prejudice and that Plaintiff be advised that he may file a separate action against these Defendants if he is able to obtain an accurate service address for each of them.

   2.   <u>Jane Doe</u>

It has also been approximately eight months since Humphries and Lewis provided Plaintiff with the names of nurses fitting Plaintiff's description of Defendant Jane Doe. This case has been

4

pending for almost one year, and Defendants have filed the instant dispositive Motions on behalf of the named Defendants. Plaintiff was given adequate time and opportunity to identify Jane Doe. Therefore, the Court finds it would unduly delay this matter and prejudice Defendants to allow Plaintiff to now identify Jane Doe. Accordingly, the Court recommends Jane Doe be dismissed from this action without prejudice and Plaintiff be advised that he may file a separate case against her should he identify her.

      3.      Denial of medical care

Defendants argue Plaintiff failed to exhaust his administrative remedies, therefore, his case should be dismissed. Plaintiff argues he did exhaust his administrative remedies. The parties' arguments will be addressed below in reference to the specific grievance to which they relate.

It is undisputed that the only grievances Plaintiff filed regarding the issues in this case are before the Court on the summary judgment record. Plaintiff filed seven grievances related to the claims made in his Complaint: DU-12-00008 on January 4, 2012; OR-12-01394 on October 21, 2012; OR-13-00118 on January 30, 2013; OR-13-00119 on January 30, 2013; OR-13-00716 on May 29, 2013; OR-13-01214 on September 20, 2013; and OR-13-01215 on September 20, 2013. ECF No. 36, pp. 11-32.[4] Plaintiff filed this case on October 3, 2013.

Further, the record clearly indicates the grievance policies and procedures at the ADC during the time in issue. Administrative Directive 12-16 ("Directive 12-16") governed grievance procedures at the ADC during the time at issue here. Directive 12-16 states in pertinent part:

> Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance.

---

[4] Plaintiff also filed grievance OR-13-00057, however, in Plaintiff's Response he states this grievance is unrelated to the claims made in this case. ECF No. 26, p. 4.

> 1. The Unit Level Grievance Form . . . shall be completed and submitted within 15 days after the occurrence of the incident, with the date beside "Step 1: Informal Resolution" filled in.
> 2. On the Unit Level Grievance Form . . . the inmate should write a <u>brief statement</u> that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form . . .
> 4. After receipt of the informal complaint . . . the problem-solver will: a. meet with the inmate within three working days to resolve the issue; or c. refer medical issues to the [Health Service Administrator] . . . as soon as practical, but in any event within one working day . . .
> 6. Upon receipt of a Unit Level Grievance Form submitted under Step One, the [Health Service Administrator], or medical department representative appointed by the [Health Service Administrator] . . . will take whatever action is deemed clinically appropriate to fully resolve the problem, document the action taken, or state why no action is necessary or appropriate, and the [Health Service Administrator] . . . will sign the form in the space provided for the staff signature . . .
> 7. As soon as practical, the [Health Service Administrator] . . . will return the Unit Level Grievance Form to the inmate, and provide a copy to the Grievance Officer. NOTE: <u>In no event should this time frame exceed three (3) working days from submission of the Unit Level Grievance Form for Step One by the inmate to the problem-solver.</u> . . .
> 11. If the designated problem-solver (or substituted person to resolve the issue such as a medical or mental health staff member) has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step 2, the formal grievance, without the completion of Step 1. In that instance, Step 2, the formal grievance must be filed no later than six (6) working days from the submission of the Unit Level Grievance Form pursuant to Step 1: this allows three (3) working days to wait for a response to Step 1, and three (3) working days to initiate Step 2. (These are not three (3) additional days, i.e., if the problem-solver returns Step One on the day it was submitted, the inmate has only three (3) working days from receipt of that response to file Step Two.) . . . .

Directive 12-16, IV., E., ECF No. 28-1 (emphasis in original).

> After attempting to resolve their issue through Step One, informal resolution, an inmate can proceed to Step Two by filing a formal grievance on the *same* Unit Level Grievance Form . . . that was used for Step One . . .
> 4. The Grievance Officer shall then transmit an Acknowledgment or Rejection of the Unit Level Grievance Form . . . to the inmate within five (5) working days after receipt. No acknowledgment is required if a written response to the grievance, signed by the . . . Health Service Administrator can be provided within five (5)

6

>working days.
>5.  The Grievance Officer will note whether the grievance is medical . . . If so, these grievances will be forwarded . . . no later than five (5) days, to the appropriate medical or mental health department for investigation and response to the inmate . . .
>7.  Every inmate shall receive a written response . . . within . . . 20 working days . . .
>8.  If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgment Form and/or the Extension Form, if applicable, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days. The Grievance Extension Form will be used in cases where a longer period of time is required for a response or resolution of the problem.  The inmate shall be notified by the responding authority, in writing, of the reason for the delay and its expected length on the Grievance Extension Form . . . Time limits for responding will be extended automatically upon the completion of the Grievance Extension Form . . ., unless the inmate disagrees in writing to the extension.  If the inmate does not agree to the extension, the inmate understands and agrees that, with that decision, no further action will be taken on the issue, and the grievance will be returned to the inmate without a decision on its merit.  By disagreeing with the extension, the inmate waives his or her right to have the grievance issue considered.

Directive 12-16, IV., F, ECF No. 28-1 (emphasis in original).

>After receiving a response from the . . . Health Services Administrator . . ., if the inmate is not satisfied, he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter or assign an appropriate staff member to do so . . .
>4.  Appeals relating to medical . . . are submitted to the Deputy Director for Health and Correctional Programs. . .
>5. Receipt of the appeal shall be acknowledged or rejected in writing within five (5) working days to the inmate by the Chief Deputy/Deputy/Assistant Director's Office . . . unless a written response can be provided within five (5) working days to the grievance signed by the Chief Deputy/Deputy/Assistant Director. . .
>6. The Chief Deputy/Deputy/assistant Director will respond in writing to the inmate concerning the decision [on his appeal] within thirty (30) working days . . . A written decision . . . at this level is the end of the grievance process. . .
>9.  The entire grievance procedure should be completed within seventy-six (76) working days unless a valid extension has been executed, or it can be documented that unforeseen circumstances have occurred.

Directive 12-16, IV., G., ECF No. 28-1.

7

> Finally, Directive 12-16 advises inmates of the PLRA limitations:
>
> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.

Directive 12-16, IV., N, ECF No. 28-1.

A concise summary of the proper grievance procedure regarding medical grievances is also included in the record. According to the Declaration of Shelly Byers, Arkansas Department of Correction ("ADC") Medical Grievance Investigator, an inmate medical grievance should proceed as follows:

> Corizon, Inc. ("Corizon") is a private healthcare provider which, under contract, furnishes medical services to the inmates within the ADC. At the unit level, if an inmate files a grievance of a medical nature, that grievance is forwarded to the appropriate Corizon medical personnel for response. If the inmate is not satisfied with Corizon's response, then he may appeal to the office of the Deputy Director for Health and Correctional Programs, Wendy Kelley. Upon receiving an appeal, the Deputy Director reviews the grievance along with any records necessary to respond. The Deputy Director's response, which is the final step of the process, is then provided to the inmate.

Byers Declaration, ECF No. 28-2. The Byers Declaration also specifically addressed Plaintiff's seven grievances at issue here:

> According to the ADC inmate grievance records, [Plaintiff] lodged eight formal medical grievances [from October 2, 2010 to October 4, 2013]: numbers DU-12-00008; OR-12-01394; OR-13-00057; OR-13-00118; OR-13-00119; OR-13-00716; OR-13-01214; and OR-13-01215.
> [Plaintiff] did not appeal grievance numbers DU-12-00008; OR-12-01394; OR-13-00057; OR-13-00118; OR-13-00119; OR-13-01214; and OR-13-01215 to the Deputy Director for Health and Correctional Programs as required by the ADC grievance policy to complete the grievance process. Grievance number OR-13-00716 was rejected at the unit level as untimely (the grievance concerned an incident that occurred more than 15 days prior to the grievance being filed). [Plaintiff] appealed the rejection of grievance number OR-13-00716 and the decision to reject the grievance as untimely was upheld by the Deputy Director for Health and Correctional programs.

> I would note that grievance number OR-13-000716 was untimely [at] the unit level . . . and was also untimely at appeal level (the grievance decision was issued by the unit on July 2, 2013 and the appeal was not received by the office of the Deputy Director for Health and Correctional Programs until August 20, 2013). Therefore, [Plaintiff] did not complete any medical grievance through appeal to the Deputy Director for Health and Correctional Programs between October 2, 2010 and October 4, 2013.

Byers Declaration, ECF No. 28-2.[5]

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

---

[5] The Court notes that Ms. Byers statement concerning the unit level decision on OR-13-000716 being upheld is contradicted by the documents on the record. The record indicates Plaintiff's appeal of this grievance was rejected for a failure to follow policy, specifically for an untimely filing of the appeal. The appeal was not considered on its merits. ECF No. 19-3, pp. 15-17.

Defendants argue Plaintiff failed to exhaust any of the seven grievances he filed relating to the issues in this case.

      a.     <u>DU-12-00008, OR-12-01394, OR-13-00118, OR-13-01214, & OR-13-01215</u>

Plaintiff filed DU-12-00008 on January 4, 2012 complaining about being treated with laxatives, that his "intestine blockage" was not being treated, and requesting to see an outside doctor. On January 19, 2014, Plaintiff received a response to DU-12-00008 stating that because the grievance was of a medical nature, it was forwarded to the Health Services Administrator. There are no other documents on the record regarding DU-12-00008.

Plaintiff concedes that he did not appeal DU-12-00008, but argues he did not appeal because the Health Service Administrator never responded to the grievance, thus, there was nothing to appeal. Further, Plaintiff argues that courts have consistently held that a prison administration's failure to respond to a grievance renders the grievance exhausted because there are no further administrative remedies available.

Defendants argue that Directive 12-16 provides procedures for this situation, and Plaintiff failed to follow these procedures:

> If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgment Form and/or the Extension Form, if applicable, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days.

Directive 12-16, IV., F, ECF No. 28-1. According to Defendants Plaintiff failed to exhaust DU-12-00008 because Plaintiff did not proceed to the next level when he did not get a response from the Health Service Administrator in compliance with ADC policy.

Plaintiff filed OR-12-01394 on October 21, 2012 complaining about the pill room being out

of Ensure. On October 23, 2012, Plaintiff received a response to OR-12-01394 stating the grievance was forwarded to the Health Services Administrator since it was of a medical nature. On November 20, 2012, James Pratt, Health Service Administrator, responded to OR-12-01394 acknowledging the pill room ran out of Ensure and noting that he would put steps into place to make sure this did not occur again. Plaintiff concedes he did not appeal Mr. Pratt's response to OR-12-01394. Plaintiff argues, however, that it was not necessary to appeal this grievance because it was a favorable decision. Plaintiff relies on case law from other circuits to support his contention.

Plaintiff filed OR-13-00118 on January 30, 2013 complaining about missing his medical appointments because of issues with gate passes. On February 8, 2013, Plaintiff received a response stating OR-13-00118 was forwarded to the Health Service Administrator because it was of a medical nature. On March 15, 2013, Mr. Pratt responded to OR-13-00118 acknowledging that Plaintiff missed appointments. Mr. Pratt noted that the appointments were rescheduled and apologized for the delay. Plaintiff concedes that he did not appeal Mr. Pratt's response to OR-13-00118 and states he believed the problem to be resolved at that time. ECF No. 26, p. 3. Defendants again argue Directive 12-16 clearly states that the grievance process is not complete until the inmate receives a written response from an appeal and Plaintiff did not do so.

Plaintiff filed OR-13-01214 on September 20, 2013 complaining that he was missing doctors appointments and colonoscopy procedures. On October 23, 2013, Plaintiff received a response stating the procedure scheduled required Plaintiff to eat nothing by mouth and this requirement was not met. The procedure was rescheduled for September 25, 2014 and was performed as scheduled. ECF No. 28-3. OR-13-00716 was denied without merit. Plaintiff concedes he did not appeal OR-13-01214 but argues he did not appeal because the colonoscopy procedure was performed by the

11

time he received the response so there was nothing further to appeal. Defendants again argue Directive 12-16 clearly states that the grievance process is not complete until the inmate receives a written response from an appeal, and Plaintiff did not do so.

      Plaintiff filed OR-13-01215 on September 20, 2013 complaining of his colonoscopy being canceled. On September 25, 2013, Plaintiff received a response stating OR-13-01215 was forwarded to the Health Services Administrator because it was of a medical nature. On October 28, 2013, the Director of Nursing responded with the same response as she provided on OR-13-01214. Plaintiff concedes he did not appeal OR-13-01215, but argues it was because there was nothing to appeal. Defendants again argue Directive 12-16 clearly states the grievance process is not complete until Plaintiff receives a written response from an appeal, and Plaintiff did not do so.

      The record clearly indicates Plaintiff failed to appeal DU-12-00008, OR-12-01394, OR-13-00118, OR-13-01214, and OR-13-01215. Further, the record is clear that in order to fully exhaust administrative remedies at the ADC regarding medical issues an inmate must appeal his grievance to Wendy Kelley, Deputy Director for Health and Correctional Programs and receive a written response. *See* Directive 12-16, IV., G., 6, ECF No. 28-1; Byers Declaration, ECF No. 28-2. Plaintiff alleges, however, his failures to receive written response from an appeal to Deputy Director Kelly on DU-12-00008, OR-12-01394, OR-13-00118, OR-13-01214, and OR-13-01215 should be excused. Specifically, Plaintiff argues he did not appeal DU-12-00008 because officials failed to respond to his unit level grievance so there was nothing to appeal; he did not appeal OR-12-01394 and OR-13-00118 because he received favorable responses on both and there was nothing to appeal; and he did not appeal OR-13-01214 and OR-13-01215 because he received the appointments he sought prior to the response to his unit level grievance so there was no need to appeal.

Pursuant to the PLRA, Plaintiff must exhaust the administrative remedies available to him in accordance with the ADC's grievance procedure. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

None of Plaintiff's alleged exceptions fit into those recognized by the Eighth Circuit. It is not Plaintiff's subjective belief regarding whether he had any administrative remedies remaining that should be considered, but whether any administrative remedies were in fact still available. *See Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (the court should not consider the inmate's subjective beliefs, logical or otherwise, in determining whether administrative procedures are available). In *Gibson*, the inmate alleged a prison employee or healthcare employee told him all complaints should be made verbally instead of through the prison's grievance procedure. The inmate argued because of this action by the prison employees the prison grievance procedure was not available to them, thus, excusing him from the PLRA exhaustion requirements. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005). The *Gibson* court did not adopt the plaintiff's reasoning. Instead, the *Gibson* court held that the plaintiff was not excused from properly exhausting his administrative remedies because he failed to show any prison official "thwarted an attempt to initiate the procedures or that any official made it impossible for [plaintiff] to file grievances." *Id.*

Plaintiff has not presented any evidence that any ADC or Corizon employee prevented him from filing grievances or appeals or from otherwise complying with the ADC grievance procedures. Even though Plaintiff did not receive a response to DU-12-00008 there was an alternate procedure for him to appeal this grievance. Directive 12-16 provides procedure for this specific type of situation:

> If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgment Form and/or the Extension Form, if applicable, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days.

Directive 12-16, IV., F, ECF No. 28-1. Plaintiff's subjective belief that he had nothing to appeal when DU-12-00008 Unit Level Grievance was not returned does not excuse his failure to exhaust the administrative remedies available to him. *See Lyons,* 305 F.3d at 809.

Further, Plaintiff's allegation that he did not need to appeal a favorable unit grievance response or a grievance in which there was nothing left to accomplish is also not supported by Eighth Circuit precedent. Directive 12-16 clearly states that the grievance process is not complete until the inmate receives a written response from an appeal:

> The Chief Deputy/Deputy/assistant Director will respond in writing to the inmate concerning the decision [on his appeal] within thirty (30) working days . . . A written decision . . . at this level is the end of the grievance process . . .

Directive 12-16, IV., G., ECF No. 28-1. Plaintiff did not file an appeal, therefore, he did not exhaust his administrative remedies in compliance with Directive 12-16. *See* Directive 12-16, IV., G., 6, ECF No. 28-1; Byers Declaration, ECF No. 28-2. There is no indication within Directive 12-16, that a grievance resolved at the unit level would be treated differently and deemed exhausted for purposes of the PLRA. Additionally, if Plaintiff received a favorable response to his Unit Level Grievance,

it is perplexing why he now bases this lawsuit on such grievances.

Further, Plaintiff does not contend any ADC or Corizon employee attempted to thwart his attempts to exhaust his grievances and Plaintiff's subjective belief that his grievance was exhausted is inconsequential. *See Gibson,* 431 F.3d at 341; *Lyons,* 305 F.3d at 809. The Court notes Plaintiff cited favorable district court cases from other circuits supporting this argument, however, it does not appear the Eighth Circuit has adopted any such rule.

Therefore, Plaintiff failed to exhaust his administrative remedies as to any claims related to DU-12-00008, OR-12-01394, OR-13-00118, OR-13-01214, and OR-13-01215. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules" and "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

      b.    <u>OR-13-00716</u>

Plaintiff filed OR-13-00716 on May 29, 2013 complaining that the delay in receiving a colonoscopy caused him to have a colostomy bag. More specifically, Plaintiff complains that he sent in five sick call requests seeking a colon cancer screening from April 2011 to November 2011 but instead was treated for hemorrhoids and constipation over that time period. Plaintiff did not receive a colonoscopy screening until March 6, 2012. On June 4, 2013, Plaintiff received a response to OR-13-00716 stating the grievance was forwarded to the Health Service Administrator because it was of a medical nature. On July 2, 2013, Mr. Pratt responded to OR-13-00716 stating Plaintiff's time frame for grieving the requests to be treated on April 11, 2011, August 1, 2011, September 28, 2011, October 3, 2011, and November 11, 2011 had passed, therefore, the grievance had no merit. Plaintiff appealed the response on July 7, 2013. Plaintiff stated in the appeal that it was not the surgery he

15

was challenging it was the "17 months to have surgery letting the cancer getting worse every month" that he was challenging. ECF No. 28-3. On August 23, 2013, Deputy Director Wendy Kelley rejected Plaintiff's appeal on OR -13-00716 as untimely. The appeal rejection is stamped "Failure to follow policy has resulted in a rejection for this appeal and marks the end of the appeal process." There is also a handwritten note on the appeal rejection stating: "untimely, he recvd it on 7.5.13. Where's it been?"

Plaintiff argues that he sent his appeal of OR-12-00716 on July 7, 2013 and he does not know where it was for the forty-four (44) days after he submitted it before it was stamped received in the Central Office on August 20, 2013.

Defendants argue Plaintiff's appeal of OR-13-00716 was properly rejected as untimely, thus, he did not exhaust this grievance. Defendants note they have no explanation as to why Plaintiff's appeal of OR-13-000716 was not received by the Deputy Director's office until August 23, 2013. Further, Defendants argue Plaintiff should have been aware his appeal had not arrived because he had not received notice it was received pursuant to policy.[6]

Directive 12-16 clearly sets out the deadline for appealing a unit level grievance: "After receiving a response from the . . . Health Services Administrator . . . , if the inmate is not satisfied, he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant

---

[6] The parties argue whether the unit level grievance of OR-13-00716 was properly denied as untimely. The question for the Court is whether OR-13-00716 was properly exhausted before filing this lawsuit. As stated above, Plaintiff must appeal medical related grievances to Wendy Kelley, Deputy Director of Health and Medical Services and receive a written response from such appeal in order to properly exhaust the grievance. It is inconsequential to the Court whether Plaintiff timely filed OR-13-00716 at the unit level for purposes of the present exhaustion issue. Therefore, the Court need not address this portion of the parties arguments.

Director who will attempt to resolve the matter or assign an appropriate staff member to do so. . . ." Directive 12-16, IV., G., ECF No. 28-1. The record indicates Plaintiff received a response related to OR-13-00716 from the Health Service Administrator on July 2, 2013. ECF No. 28-3, p. 16. Therefore, according to Directive 12-16, Plaintiff's appeal was due five days later during the week of July 8, 2013.[7] Plaintiff's appeal was dated July 7, 2013, and Plaintiff swears under penalty of perjury that he submitted the appeal on the same day. The appeal, however, was stamped received by the Deputy Director's office on August 20, 2013. ECF No. 28-3, p. 16. Neither party offers an explanation as to where Plaintiff's appeal of OR-13-00716 was between July 2, 2013 and August 20, 2013.

An exception to the PLRA exhaustion requirement is afforded to inmates when a prison official prevents an inmate from utilizing grievance procedures. *See Gibson,* 431 F.3d at 341. Here, Plaintiff offers under penalty of perjury that he submitted his appeal of OR-13-00716 on July 7, 2013 and he has no knowledge of where the appeal was between July 7, 2013 and August 20, 2013 when it was received by the Deputy Director's office. ECF No. 26, pp. 4-5. In their Reply, Defendants state they have no explanation of where OR-13-00716 appeal was from July 7, 2013 to August 23, 2013 when it was received in the Deputy Director's office. The documents relating to OR-13-00716 appeal are of little help in solving this unexplained time lapse. The documents contain a received stamp of August 20, 2013 and a handwritten note: "untimely, he recvd it on 7.5.13. Where's it been?" ECF No. 28-3, pp. 15-16. Therefore, the question becomes whether there is a genuine issue of material fact as to whether this unexplained time lapse qualifies Plaintiff for the exception noted

---

[7] The Court notes that there is an argument about whether Directive 12-16 requires five business days or includes weekends and holidays, however, here Plaintiff's appeal was not received for forty-four (44) days rendering this delineation inconsequential.

17

in *Gibson*.

Plaintiff swears under penalty of perjury that he submitted the grievance on July 7, 2013. Defendants bear the burden of showing there are no genuine issue of material fact, however, they offered the Court no explanation of this lapse of time. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Given that the Court must consider all evidence and inferences in a light most favorable to Plaintiff as the nonmoving party, the Court finds the unexplained time lapse presents a genuine issue of material fact as to whether Plaintiff is entitled to an exception to the PLRA exhaustion requirements regarding OR-13-00716. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).

Accordingly, the Court finds there are genuine issues of material fact as to whether Plaintiff should be excused from the PLRA exhaustion requirement regarding the issues raised in OR-13-00716.

IV.     **CONCLUSION**

For the foregoing reasons, I recommend Defendants' Motions for Summary Judgment (ECF Nos. 17 & 25 ) be **GRANTED** in part and **DENIED** in part and that Defendants Anderson, Huggett, and Jane Doe be dismissed from this action without prejudice. Specifically, Plaintiff's claims related to grievance numbers DU-12-00008, OR-12-01394, OR-13-00118, OR-13-01214, and OR-13-01215 be dismissed without prejudice pursuant to the PLRA. 42 U.S. C. § 1997e(a). Plaintiff's claims related to OR-13-00716 remain for further resolution.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

reminded that objections must be both timely and specific to trigger de novo review by the district court.

**DATED this 19th day of August 2014.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE