THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES MASON
(ADC # 07013)                                                                                           PLAINTIFF

V.                              Civil No. 6:13-cv-06110-SOH-MEF

CORIZON, INC.,
ARIC SIMMONS, APN, and
WANETTA CLOWERS, APN                                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by the Plaintiff, James Mason, pursuant to 42 U.S.C. § 1983.

Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is currently incarcerated in the Arkansas

Department of Corrections ("ADC"), Ouachita River Unit. Pursuant to the provisions of 28 U.S.C.

§ 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred

this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Second Summary Judgment Motion from the Defendants (Doc. 43)

and Plainitif's Amended Motion for Appointment of Counsel (Doc. 66). Plaintiff responded in

writing (Docs. 49, 70), and orally at a hearing held on October 28, 2015. After careful consideration,

the undersigned makes the following Report and Recommendation.

I.      **BACKGROUND**

Plaintiff filed his Complaint on October 3, 2013. (Doc. 1) He alleges a § 1983 claim based

on denial and delay of medical care for his colon cancer. Specifically, he alleges that he was denied

medical care for colon cancer for over a year while instead being treated with "lies and laxatives."

(Doc. 1, p. 10)

1

According to his Complaint (Doc. 1), Plaintiff first started requesting to be checked for colon cancer in April 2011 due to "colon trouble and passing blood." He had been working in the dental lab and had access to medical books so he was able to research his symptoms. He was told he had hemorrhoids and constipation, and he was treated with laxatives. In August 2011, a hemoccult card blood stool test was done and came back positive. In October 2011, another hemoccult card test also came back positive. Research by the Court indicates a hemoccult card is a test to detect lower gastrointestinal tract bleeding associated with cancers and polyps.[1]  Despite the positive blood stool test, he did not receive a colonoscopy until March 2012. At that time a three inch tumor was detected and diagnosed as Stage 1 cancer. Plaintiff alleges his colonoscopy, and later some of his chemotherapy and other treatments, were delayed or not performed due to gate passes not being prepared. His treatment plan indicated surgery to be completed on July 15, 2012. It was not performed until September 2012, and there were serious complications because he did not receive proper pre-surgical bowel prep. A second surgery was required later that month. At this surgery, his cancer was diagnosed as Stage 2 or 3. On May 10, 2013, Plaintiff underwent surgery again, receiving a permanent colostomy bag.

Plaintiff is currently in ADC hospice being treated with palliative end-of-life care for terminal colon cancer. (Doc. 70)

On August 19, 2014, the Honorable James R. Marschewski, United States Magistrate Judge for the Western District of Arkansas, entered a Report and Recommendation. (Doc. 37) Judge Marschewski found there were genuine issues of material fact remaining as to whether Plaintiff

---

[1] http://www.webmd.com/colorectal-cancer/fecal-occult-blood-test-fobt (accessed December 16, 2015).

should be excused from the PLRA exhaustion requirement for Grievance OR-13-00716. All other grievances were dismissed for failure to exhaust. The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, entered an Order adopting this Report and Recommendation on September 24, 2014. (Doc. 42)

On May 8, 2015, Defendants filed their second and currently pending procedural Motion for Summary Judgment, or in the alternative, Motion for Hearing on the Issue of Exhaustion. (Doc. 43) An initial Scheduling Order (Doc. 47) was then filed on May 14, 2015, establishing a deadline of September 14, 2015 for the filing of dispositive motions, and setting a summary judgment hearing on October 28, 2015. (Doc. 47)

On July 15, 2015 Defendants filed a Motion for Continuance of the Motion for Summary Judgment Hearing set for October 28, 2015, and Motion for Extension of Time within which to file a Substantive Motion for Summary Judgment. (Doc. 51) Defendants requested the Court to limit the October 28, 2015 summary judgment hearing to procedural matters, continue the summary judgment hearing as to any substantive summary judgment motion *only*, and enter an Order permitting Defendants to file a substantive motion for summary judgment and conduct discovery on substantive issues if necessary after the Court has addressed the pending procedural Motion for Summary Judgment. The Court entered an Order granting this motion on October 15, 2015. (Doc. 64)

On October 19, 2015, Plaintiff filed an Amended Request for Counsel, alleging he had suffered a stroke and was on significant pain medication for his end-stage colon cancer. (Doc. 66)

A summary judgment hearing was held on October 28, 2015. Plaintiff appeared by video conference and testified. Attorney Brent Jay Eubanks appeared for the Defendants. ADC Medical Grievance Coordinator, Shelly Byers, appeared in person and testified for Defendants.

During the hearing, Plaintiff requested that the attending prison guard read a document into evidence for him. The Court directed this document be sent in and filed instead. This document was received on November 9, 2015. (Doc. 70) Defendants also filed a Response to Plaintiff's Request for Counsel (Doc. 69), which included Plaintiff's recent prescription drug records from the prison.

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

Defendants raise three issues in the current Motion for Summary Judgment: (1) Plaintiff

failed to exhaust his administrative remedies as to Grievance OR-13-00716; (2) Plaintiff's Complaint should be dismissed for improper venue; and, (3) Defendant, Corizon, Inc., is entitled to summary judgment as a stand-alone corporate Defendant. In the event any part of the claim survives, Defendants also request an additional evidentiary hearing on the issue of exhaustion.

### A. Grievance OR-13-00716

Defendants argue that Plaintiff's grievance was found to be untimely at Step One of the ADC Grievance Process, and his appeals were denied at the subsequent two levels of the process; therefore, they contend his grievance was not exhausted. (Doc. 45, pp. 4-9.) They further argue his grievance was not exhausted because the merits of the grievance were never addressed by the ADC. (Doc. 45, p. 9)

Plaintiff argues the Step One grievance was timely because it was filed within fifteen working days of his colon cancer surgery on May 10, 2013. He further states this surgery was when he had "visual evidence of permanent irreversible injury to my body, as a direct result of the fact that APN's Clowers and Simmons deliberate indifference to the serious medical need I tried so desparately to get them to diagnose and treat" for approximately a year and a half. (Doc. 49, p. 1) He argues the further denials to review the merits of the case were the fault of the ADC, not any lack of timeliness on his part. (Doc. 49)

For clarity of reference, the history of this grievance and the facts elicited at the October 28, 2015 hearing and subsequent documents will be outlined before addressing the arguments.

According to the ADC Administrative Directive 12-16, there are three primary steps to the grievance process for inmates. Step One is the Informal Resolution Procedure. At Step One, the inmate should submit a Unit Level Grievance Form "within 15 days after the occurrence of the

incident." (Doc. 44-1, p. 5)

Step Two is the Formal Grievance Procedure. At this step, the inmate files a formal grievance on the same unit level grievance form and deposits it in the designated grievance box. (Doc. 44-1, p. 8) This must be done "within three (3) working days from receipt of [the] response" to Step One. (Doc. 44-1, p. 8) The inmate should receive an acknowledgment or rejection notice. Based on the language of the policy, it is not clear if the inmate should receive this acknowledgment or rejection within five working days. (Doc. 44-1, p. 9) The inmate should receive a written response by the Warden or Warden's designee within 20 working days. (Doc. 44-1, p. 10)

Step Three is the Appeal to the Chief Deputy/Deputy/Assistant Director Level. This must be done "within five (5) working days" after receiving a response to Step Two. (Doc. 44-1, p. 11)

In this case, Plaintiff testified he underwent colon cancer surgery on May 10, 2013. He was returned to the ADC barracks on May 17, 2013. (Doc. 44-3, p. 4) He submitted his Step One Grievance on May 29, 2013. In this grievance, Plaintiff references his May 10 surgery, his colostomy, the fact he was not checked for cancer despite repeated requests, and a diagnosis of adenocarcinoma after a colonoscopy on March 6, 2012.  (Doc. 44-3, p. 4) He filed his Step Two grievance, using the same Unit Level Grievance Form, on June 3, 2013. (Doc. 44-3, p. 4) On June 4, 2013, Plaintiff received a response indicating his grievance was of a medical nature and was being forwarded to the Health Services Administrator for response.

The Health Services Administrator denied the grievance as untimely on July 2, 2013. (Doc. 44-3, p. 2) The grievance reply states:

> "You state May 10, 2013 you had a *colonoscopy* as a result of incompetent, deliberate indifference, and knowingly lying concerning cancer treatment. You state you asked to be treated 4-11-11, 8-1-11,

9-28-11, 10-3-11, and 11-11-11.

Per policy the time frame for grieving these appointments has passed.
This grievance is without merit."

(Doc. 44-3, p. 2) (Emphasis added.)

Plaintiff signed his Step Three appeal for this decision on July 7, 2013, noting he had received the denial on July 5, 2013. (Doc. 44-3, p. 2) In his appeal, Plaintiff noted he was not grieving the colonoscopy; but rather, he was grieving "[t]he 5 sick call request[s] [which] were not dealt with which cause[d] the cancer to increase to having a colostomy bag permanently," and "lying and waiting 17 months to have surgery letting the cancer getting worse every month." He correctly noted the date of his surgery was May 10, 2013. (Doc. 44-3, p. 2)

This appeal was not received by Deputy Director Kelley in the Central Office until August 22, 2013. On it was a handwritten note stating, "untimely, he recvd it on 7.5.13. Where's it been?" (Doc. 44-3, p. 1) At the time of Defendants' first Motions for Summary Judgment (Docs. 17, 25), the Defendants offered no explanation for the 44 days between when Plaintiff swears he submitted the appeal and when it was received.

At the summary judgment hearing held on October 28, 2015, Plaintiff again testified he submitted the Step Three appeal on July 7, 2013 by placing it in the "truck mail" at the prison. He did not know why there was a delay in its eventual delivery to the Central Office 44 days later.

Defendants argue in their brief there was no indication that there were delays or problems with the truck mail. The ADC Medical Grievance Coordinator, Shelly Byers, testified at the hearing concerning the delay. She testified that when an inmate wants to file an appeal, they can use U.S. mail or truck mail. For truck mail, this is done by placing an envelope in a mail receptacle. The mail

7

is loaded onto a truck and then goes to a warehouse in Pine Bluff, where it is unloaded and sorted. Appeals are then loaded back onto a truck and sent to the Central Office. When queried repeatedly by the Court, she stated there was no way to log or record when something was put in truck mail. She indicated that the handwritten note asking "where's it been" was done by the administrative assistant to the deputy director. She also stated that a grievance from Plaintiff with a later date on it arrived prior to the appeal for OR-13-00716.

### 1. Timeliness of Step One Grievance

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, mandates exhaustion of available administrative remedies before an inmate files suit. The PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances," leaving it to the court below to determine in the first instance the sufficiency of the exhaustion in these cases. *Id*. at 219. To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal citation omitted). The Court stated, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance

procedures; or, (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris,* 347 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)). "Available remedies are capable of use for the accomplishment of a purpose: immediately utilizable and accessible." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (internal quotations and modifications omitted).

Whether administrative remedies are "available" when an inmate is physically or mentally incapacitated due to a medical condition, or treatment for that condition, is a case of first impression in the Eighth Circuit. This concept was implicitly raised in an unpublished case in 2011, but the facts did not provide the Eighth Circuit with the opportunity to address it because the Plaintiff had waited over four years after his recovery to submit a grievance. *Hahn v. Armstrong*, 407 Fed. Appx. 77 (8th Cir. 2011.) In *Hahn*, the Plaintiff alleged officials allowed other inmates into his cell to attack him. He argued that the delay in filing his grievance was caused by medical treatment for injuries, by prison officials ignoring his requests for information about the grievance process, and by erroneous legal advice. *Id.* at 78. In affirming the District Court's dismissal of the case for failure to exhaust, the Court stated:

> "[T]his Court has not recognized exceptions to the PLRA's exhaustion requirement for delay due to medical treatment or poor legal advice. Even were we to recognize these exceptions, they would not excuse the four year delay in this case."

*Id.* at 79.

The Fifth, Sixth, and Seventh Circuits currently recognize an exception to grievance filing

9

deadlines when an inmate is physically or mentally incapacitated. In *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003)(per curiam), the inmate suffered a broken right hand as a result of a fall. He "sustained multiple fractures and required extensive medical treatment, including reconstructive surgery." *Id.* at 865. Due to these injuries to his hand, he was unable to timely complete and file his Step One grievance form. Once his hand healed, he attempted to exhaust his administrative remedies by filing a Step One grievance. The grievance was denied as untimely. He filed a § 1983 claim, which was dismissed by the District Court for failure to exhaust administrative remedies. He filed a second grievance, which was also denied as untimely. He then "filed a Rule 59(e) motion, informing the Court of his second attempt to exhaust." *Id.* at 866-67. The Fifth Circuit held he had exhausted the administrative remedies that were personally available to him. The Appeals Court further stated, "administrative remedies are unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Id.* at 868. *See also Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (citing *Days v. Johnson* for the premise that "remedies [were] unavailable because physical injury precluded timely grievance," as well as listing other cases for exhaustion exceptions similar to those in the Eighth Circuit).

In *Braswell v. Corrections Corp. of America*, 419 Fed. Appx. 622 (6th Cir. 2011), a conservator for a schizophrenic inmate filed a § 1983 lawsuit alleging a failure to provide healthcare, inhumane conditions of confinement, and failure to protect from other inmates and CCA employees. *Id.* at 624. The District Court found administrative remedies were no longer available to the inmate once he could no longer speak coherently, but granted summary judgment based on an insufficient showing of physical injury. *Id.* at 625. The Sixth Circuit found, among other points, that there was

10

"substantial doubt as to whether [the inmate] was mentally capable of filing a grievance," and reversed the District Court's grant of summary judgment. *Id.* at 626, 629.

In *Hurst v. Hantke*, 634 F.3d 409 (7th Cir. 2011), the inmate suffered a stroke, and could not file his grievance until eight and a half months after the stroke. The grievance was denied as untimely because it was not filed within 60 days of the event giving rise to the claim. The inmate argued he was "almost totally incapacitated" by the stroke. *Id.* at 410. The inmate ultimately lost his exhaustion claim because he did not provide evidence of his incapacitation in the summary judgment proceedings. The Seventh Circuit, however, took the opportunity to emphasize that "a remedy is not 'available' within the meaning of the Prison Litigation Reform Act to a person physically unable to pursue it." *Id.* at 412. In coming to this conclusion, the Seventh Circuit reasoned as follows:

> "In its brief in this Court the state refuses even to acknowledge that physical incapacitation is good cause for an untimely filing. The implication is that even if the plaintiff had been in a coma for 60 days after the allegedly willful failure to treat his stroke promptly, he would have forfeited his administrative remedies, thus blocking his access to the federal courts. It is hard to believe that this is a correct interpretation of the Illinois code's failure to state that physical incapacity can be good cause for an untimely filing. (Compare the grievance procedure for federal prisoners, which provides that 'an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal' is a 'valid reason for delay' in filing a grievance. 28 C.F.R. § 542.14(b); *McCoy v. Gilbert*, 270 F.3d 503, 510-11 (7th Cir.2001).) In any event, an administrative remedy that would be forfeited for failure to comply with a deadline that in the circumstances could not possibly be complied with would not be 'available' the meaning of 42 U.S.C. § 1997e(a), as held in *Days v. Johnson,* 322 F.3d 863, 867-68 (5th Cir. 2003) (per curiam). (An unrelated ruling in Days, involving burden of proving exhaustion, was rejected in *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). *See, e.g., Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir.2010).)"

*Id.* at. 411-12.

District courts in several Circuits, including the Eighth Circuit, have also recognized this exception. *See, e.g., Michalek v. Lunsford*, 2012 WL 1454162, at *2-4 (E.D. Ark., Apr. 5, 2012) (genuine dispute about the availability of the grievance process for a mentally ill inmate suffering from psychotic disorders) (report and recommendation adopted in 2012 WL 3235781);*Williams v. Hayman*, 657 F.Supp. 488, 496 (D.N.J. 2008) ("Whether Mr. Williams' disability inhibited his capacity to express his grievances comprehensibly in writing in accordance with the Grievance Program's requirements is a triable issue of fact in this case"); *Alvarez. v. Doe*, 2012 WL 4834186, at *3 (S.D.N.Y., Oct. 11, 2012) (citing the Fifth Circuit *Days v. Johnson* as an example of an unavailable remedy); *Ollison v. Vargo*, 2012 WL 5387354 (D.Or., Nov. 1, 2012) (grievance process not "available" to an inmate incapacitated by a stroke); *Jenkins v. Federal Bureau of Prisons*, 2011 WL 4482074 (D.S.C., Sept. 26, 2011) (grievance procedure unavailable to an inmate who suffered second and third degree burns over a significant portion of his body and was unable to write due to a skin graft on his hand).

The holdings and reasoning of these cases are in line with the Eighth Circuit definition of an available remedy as one which is "immediately utilizable and accessible." *Porter*, 781 F.3d at 451. If, as a practical matter, one is unable to use or access a remedy due to physical or mental incapacity, it is logical to conclude that the remedy is not "available."

These holdings and their reasoning also seem to be in line with the policy reasons underlying the exhaustion requirement. The PLRA exhaustion requirement gives prisoners an incentive to use the grievance process, gives prisons a fair opportunity to correct their own errors, reduces the quantity of federal prison suits, improves the quality of those suits that do go to federal Court, and improves the quality of the record. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). All of these policy

12

rationales are directed at encouraging inmates to be diligent and prompt in their filing, and for prisons to be prompt and accurate in their responses to grievances.

Procedurally barring a diligent inmate due to his or her physical or mental incapacity to file offends not only notions of constitutional fairness, but the policy rationales underlying the PLRA. *See* Gray Proctor, *Ngo Excuses: Proving, Rebutting, and Excusing Failure to Exhaust Administrative Remedies in Prisoner Suits After Woodford v. Ngo and Jones v. Bock*, 31 Hamline L. Rev. 471 (2008). An inmate who diligently files as soon as physically or mentally capable  is not attempting to circumvent the grievance procedure. Assuming they have followed other grievance rules, the diligent inmate provides adequate notice of the grievance to the prison so that the prisoner may correct any errors or problems and develop a record in the event the case comes to federal Court. Finally, denying the diligent inmate who filed as soon as physically capable, blocks them not only from access to the grievance procedure but from protecting their constitutional rights in federal Court as well. This was not the intent of the PLRA, which specifically discusses exhaustion in the context of "such administrative remedies *as are available*." 42 U.S.C. 1997e(a) (emphasis added). This lack of access to the grievance procedure or the courts is particularly egregious when the very action or inaction being grieved is alleged to have caused the physical or mental incapacity.

Applying the exception in this case, Plaintiff is entitled to an exhaustion exception for his Step One Grievance. Plaintiff testified he was not released from the hospital after his surgery for colon cancer until May 17, 2013. He submitted his Step One Grievance on May 29, 2013. This was 12 days after he returned from the hospital and the administrative procedure became "available" to him. The deadline in the ADC policy is 15 days. The undersigned, therefore, finds the filing of

Plaintiff's Step One grievance to be timely.[2]

## 2. Timeliness of Step Three Grievance Appeal

The next timeliness issue concerns the whereabouts of Plaintiff's Step Three appeal between July 7, 2013 and August 20, 2013. This unexplained 44 day delay was the basis for the denial of summary judgment on August 14, 2014. (Doc. 37, p. 18)

At the hearing, Plaintiff testified under penalty of perjury that he submitted the Step Three appeal on July 7, 2013 by placing it in the "truck mail" at the prison. He did not know why there was a delay in its eventual receipt at the Central Office. This is consistent with his earlier statement in response to the Defendants' first summary judgment motion.

In their brief, Defendants argue there were no large-scale systemic problems or delays that they were aware of for the truck mail for the period in question. The ADC Medical Grievance Coordinator, Shelly Byers, testified that a later grievance by Plaintiff was received before OR-13-000716 in the Central Office. She could not provide any explanation for the delay.

Ms. Byers also testified about the truck mail process, which revealed several points where mail could be missorted or misplaced. As the Court understands it, the process is as follows: first,

---

[2] Plaintiff's argument concerning the ADC's use of "days" and "working days" in Administrative Directive 12-16 has merit. Arkansas law is clear that ambiguity in a contract is construed against the drafting party. *Stone v. Metropolitan Life*, 184 Fed. Appx. 584, 586 (8th Cir. 2006) (citing *Elcare, Inc. v. Gocio*, 267 Ark. 605 (1980). In reviewing 12-16, the Court notes several drafting ambiguities concerning the timeframes listed for inmates. For example, in the three primary steps of the grievance process, the timeframes for both Steps Two and Three are defined as "working days," but the timeframe for Step One is listed as "days." Additionally, the majority of the timeframes listed for deadlines throughout the policy are defined as "working days," with the entire process to be completed in 76 "working days." While it is not this Court's role to interfere in the working of the prison, the use of different day measurements at the various steps of the grievance process, without any stated or apparent functional purpose for use of the different measurements, does appear to create ambiguity for inmates.

the inmate places his or her envelope into the mail receptacle designated for "truck mail;" second, the mail is loaded onto a truck and taken to a warehouse in Pine Bluff where it is unloaded and sorted; and, third, the sorted mail is then loaded back onto trucks and taken to the destination address. The ADC does not keep any log or record as to when an item of mail is placed in the truck mail receptacle, nor when it is sorted. The mail is not date-stamped at any point  until it reaches its destination - in this case, at the Central Office.

Based on the testimony before the Court, there are at least four steps in the process where a piece of mail could go astray. With no log, date-stamp, or tracking system in place to indicate when an item of truck mail entered the process, or when it was sorted and sent on to its ultimate destination, it is simply not possible for the ADC to state with any degree of certainty what happened to any particular piece of mail that may become delayed, misplaced, or lost.

The Court must view all evidence in the light most favorable to the Plaintiff. In connection with Defendants' first summary judgment motion, the Court found that the unexplained 44 day delay presented a genuine issue of material fact as to whether the ADC had prevented Plaintiff from utilizing the grievance procedures, thereby entitling Plaintiff to an exhaustion exception.

The hearing testimony from Ms. Byers eliminated any question as to whether Plaintiff is eligible for an exhaustion exception. He is. The ADC permits inmates to use truck mail to file grievance appeals. Knowing that these grievances are time-sensitive, they do not date stamp or log when these appeals are received into truck mail, waiting instead to date-stamp them when they are received in the Central Office after a multi-step handling, transporting, and sorting process. The argument that they are aware of no large-scale problem with the truck mail during that time is without merit. Large-scale issues do not need to exist for one piece of mail to go astray in any mail

process - hence the existence of registered and return receipt mail and mail tracking in the free-world. Having set up a system which does not log, date-stamp, or track grievance appeals before they reach the Central Office, the ADC cannot now rely on the absence of this information to claim Plaintiff's grievance appeal was untimely.

### 3. Opportunity to Address Grievance "On the Merits"

Defendants further argue Plaintiff's grievance was not exhausted because the ADC never addressed the merits of the claim, instead denying it for procedural reasons. They argue the appropriate remedy in this case it to remand the grievance for the ADC to review on the merits. The Court disagrees.

First, Plaintiff pursued all three steps of the grievance process with ADC. The ADC therefore had several occasions to review the merits of the grievance and refused to do so, instead relying on a procedural denial of the grievance. The Court is also troubled by the substantive errors contained in those denials. On July 2, 2013, Plaintiff's Step Two grievance was denied by the Health Services Administrator. His summary of Plaintiff's grievance leaves out significant portions of the grievance and makes significant misstatements of fact. Most striking is the complete failure to discuss Plaintiff's colon cancer surgery, advanced cancer, delay of surgery after a positive diagnosis of adenocarcinoma, and the permanent colostomy bag. Instead, he stated Plaintiff was grieving a colonoscopy procedure and earlier requests to be treated. These errors are significant enough to question if the Health Services Administrator was actually looking at OR-13-00716 at the time he wrote the denial. Further, these errors were not caught when reviewed by the Deputy Director on the grievance appeal. Presumably it is implicit in the ADC grievance policy that inmates should receive a response based on an accurate and complete review of their grievances. In light of such significant

16

errors, the Court has no confidence that a remand would produce any more accurate results, even if such a remand was supported by Eighth Circuit law.

Second, a remand back to the ADC for substantive review is not the appropriate remedy. The Court can find no instance where, after finding an exhaustion requirement exception, the Eighth Circuit has remanded the grievance back to the ADC for substantive review. *See, e.g., Miller v. Norris*, 247 F.3d 736, 739-40 (8th Cir. 2001) (inmate's allegations that prison failed to respond to requests for grievance forms sufficient to raise inference that he had exhausted remedies; remanding the case back to the District Court); *Foulk v. Charrier*, 262 F.3d 687, 698-670 (8th Cir. 2001) (District Court did not err in declining to dismiss for failure to exhaust; remanding case back to District Court for further proceedings on other issues).

### B.  Venue

Defendants argue the denial of medical care grieved by Plainitiff in OR-13-000716 occurred in Pine Bluff, which is in the Eastern District of Arkansas. They argue that the appropriate remedy is dismissal, not transfer to the Eastern District, because considerable time and expense has already been spent on this case, and because Plaintiff failed to exhaust administrative remedies. (Doc. 45, p. 9-11) At the hearing, Plaintiff agreed Defendants Clowers and Simmons treated him in Pine Bluff. His Supplement submitted after the hearing states that same thing, but asks that his case be transferred if necessary, rather than be dismissed. (Doc. 70, p. 4)

First, venue is proper in "a judicial district in which *any* defendant resides, if all Defendants are residents of the State in which the district is located. 28 U.S.C.A. § 1391(b)(1) (emphasis added). There is no dispute that Defendant, Corizon, Inc., meets the definition of a "resident" of this District. Therefore, venue is proper in this District.

17

Second, at this point in the litigation of this case, transfer or dismissal for improper venue would be inappropriate even if Corizon were to be dismissed as a defendant. Defendants waived their venue objection when they filed their first summary judgment motion in this Court without making any argument concerning venue. Pursuant to 28 U.S.C.A. § 1406(b), nothing will "impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." "Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity." *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990). Litigation conduct may foreclose a defendant from pursuing a venue objection, even if it was asserted in a timely way. Charles Alan Wright, et. al., *Federal Practice and Procedure*, Vol. 14D § 3829 (4th ed., Westlaw, current through April 2015). *See also, e.g., Picht v. John R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) (affirmative defense waived when it was plead but not included in a response to partial summary judgment motion); *Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 736 (8th Cir. 1997) (finding defendant did not waive venue claim when they included venue issues in both pleadings and summary judgment, but distinguishing it from a case defendant raised venue in pleadings but failed to pursue in summary judgement or trial); *Yeldell*, 913 F.3d at 539 ("delaying consideration on this threshold issue manifests an intent to submit to the court's jurisdiction"); *Violette v. Smith & Nephew Dyonics, Inc.*, 62 F.3d 8 (1st Cir. 1995)("Merely mentioning an issue in a pleading is insufficient to carry a party's burden actually to present a claim or defense..."); *Steward v. Up North Plastics*, 177 F.Supp. 2d 953 (D. Minn. 2001) (defendants waived venue objection when they not only failed to file an objection in their first responsive pleading but then engaged in significant motion practice, including filing a motion for summary judgment); *Shoucair v. Snacker*, 2008 WL 25559279 at *1 (E.D. Mich. June 23, 2008) (venue defense waived when defendant responded to

18

complaint with a summary judgement motion arguing *Heck v. Humphrey*, qualified immunity, and Eleventh Amendment immunity, but did not raise any issues regarding venue).

Likewise, a 28 U.S.C.A. § 1404(a) transfer for the convenience of the parties is not appropriate in this case either. While a § 1404(a) motion is not time-limited by Fed. R. Civ. P. 12(h) in the same way as other jurisdictional objections, a delay in pursuing it "may cause the district judge to refuse a transfer that otherwise would have been granted had it been sought earlier." Charles Alan Wright, et. al., *Federal Practice and Procedure*, Vol. 15 § 3844 (4th ed., Westlaw, current through April 2015) (citing *U.S. v. Lord*, 542 F.2d 719, 724 (8th Cir. 1976)). The Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider," instead indicating district courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted. *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010), citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) and *Terra Int'l, Inc. v. Miss. Chem Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The statutory language itself notes the interest of justice, the convenience of parties, and the convenience of witnesses as factors. The interests of justice can include such factors as: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696. *See, e.g., Arkansas Trophy Hunters Association, Inc. v. Texas Trophy Hunters Association, Inc.*, 2006 WL 3742239 (W.D. Ark., Dec. 18, 2006) (interests of justice, among other factors, do not support a venue change when the matter had been before the court for almost a year, the court was familiar with the case and had heard evidence in relation to a motion, transfer would result in a delay in resolution of the issues, and transfer would require a new

19

court to familiarize themselves with the issues). "Considerable deference" should be given to the Plaintiff's choice of forum in a § 1404(a) transfer request. *In re Apple, Inc.*, 602 F.3d at 913. Deference still remains, but is lessened, if the events giving rise to the litigation did not occur in the forum. *Oien v. Thompson*, 824 F.Supp.2d 898, 905 (D. Minn. 2010).

Defendants waived any possible § 1406 venue objections through their litigation conduct in this District for this case. Defendants, Corizon and Simmons, did include a venue objection in their Answer filed on December 2, 2013. (Doc. 13) Defendant, Clowers, also included a venue objection in her Answer filed on January 10, 2014. (Doc. 24) Defendants, Corizon and Simmons, then filed a Motion for Summary Judgment on December 20, 2013. (Doc. 17) This Motion made no mention of a venue objection, relying instead on a failure to exhaust argument. Defendant, Clowers, did the same on January 10, 2014. (Doc. 25) Plaintiff replied in several documents, including filling out a questionnaire provided by the Court. (Docs. 30, 31, 34, 36) Defendants replied to one of his responses on January 28, 2014. (Doc. 32) A Report and Recommendation was filed on August 19, 2014. (Doc. 37) Defendants requested an extension of time to respond to the Report and Recommendation. This was granted by the Court on September 8, 2014. (Doc. 40) Defendants filed an Objection to the Report and Recommendation on September 9, 2014. (Doc. 41) This Objection again focused on failure to exhaust arguments and did not mention any venue objections. The Report and Recommendation was adopted by the District Judge on September 24, 2014. (Doc. 42)

Almost eight months later Defendants filed their Second Motion for Summary Judgment on May 8, 2015. (Doc. 43) This Motion did mention a venue objection, requesting that the Court dismiss the action for improper venue. Defendants state:

"This case has been ongoing for two years. The parties have gone to

20

> considerable time and expense to develop the factual backdrop of this
> case. . . As discussed *supra*, Plaintiff did not exhaust his
> administrative remedies. For these reasons the case should be
> dismissed." (Doc. 45, p. 11)

The Court agrees that the case has been ongoing for two years, and that extensive time and effort have been devoted to it by all involved. By filing a first summary judgment motion without raising any venue objection, Defendants waived any § 1406 venue objection by submitting to the jurisdiction of this Court. Having done so, they cannot now revive that venue objection by filing a second summary judgment motion with a venue argument one and a half years after the commencement of the case. Neither a transfer nor a dismissal are warranted in this case.

Finally, any § 1404(a) transfer request must be denied in the interest of justice. Plaintiff chose to file in the Western District of Arkansas on October 3, 2013. (Doc. 1) All but one of the eight grievances alleged in his Complaint, including OR-13-00716, are Ouachita River Unit Grievances (as indicated by the "OR" designation on the grievance number). The Ouachita River Unit is located within the Western District of Arkansas. While the denial of care incidents grieved in OR-13-00716  took place in the Eastern District of Arkansas, his choice still deserves some deference, particularly given his terminal illness and physical and mental frailty. His physical and mental state require this Court to place a heavy emphasis on the Plaintiff's convenience. Judicial economy also weighs against a transfer in this case. This Court is familiar with the case and has received and heard evidence on two summary judgment motions to date. Transfer would result in a delay in resolution of the issues and would require a new court to familiarize itself with a case that has been ongoing for over two years.

### C. Dismissal of Corizon

Defendant, Corizon, Inc., argues it should be dismissed as a party in this case because Plaintiff's only claim against the company is based on the theory of *respondeat superior*. (Doc. 45, p. 11-14)

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. "A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Tacit authorization and failure to train can, in some circumstances, support a claim for supervisory liability. *Parrish v. Ball,* 594 F.3d 993 (8th Cir. 2010); *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994).

Plaintiff's testimony at the hearing concerning the policies of Corizon was somewhat sparse. He noted only a violation of time deadlines for sick calls, and lack of employee training. He further alleged that the supervisor and others knew he knew of the positive test for his cancer and "should have done something." In his Supplement (Doc. 70), he alleges Corizon initiated and maintained "inadequate and illegal Policies and protocols" and failed to train or supervise Corizon, Inc. employees.

22

Ordinarily, these allegations of tacit authorization and failure to train, without at least some evidence to support them, would not be sufficient to survive summary judgment; however, Defendants specifically requested that this stage of the summary judgment proceedings be restricted to procedural issues (i.e., exhaustion), and they also requested a stay of discovery pending the outcome of their "procedural" summary judgment motion. These requests were granted by the Court. (Doc. 59) As a result, Plaintiff was effectively blocked from accessing any further records in discovery which might have provided that evidence. Plaintiff noted his request for medical records in his Motion to Compel Production of Documents. (Doc. 52) Having asked to stay discovery and limit this stage of the summary judgment proceedings to procedural issues, the Defendants may not now ask this Court to dismiss Corizon because Plainitiff has not provided sufficient evidence of a policy or custom which violated his constitutional rights.

### D.  Evidentiary Hearing on the Issue of Exhaustion

Defendants correctly state the Eighth Circuit is currently silent on whether an evidentiary hearing must be conducted on the issue of exhaustion when any genuine issue of material fact exists as to exhaustion. (Doc. 45, p. 14) It is not necessary, however, to address this question in this case. "Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Porter*, 781 F.3d at 451 (citing *Jones*, 549 U.S. at 211-12). As discussed above, despite two summary judgment motions and a summary judgment hearing on the topic, Defendants have not met their burden. No genuine issue of material fact as to exhaustion exists.

To date in this case, the issue of exhaustion has been addressed in two summary judgment motions by Defendants. For the second summary judgment motion, a hearing was held, with an emphasis on exhaustion. Both Plaintiff and Defendant were permitted to proffer testimony and

23

exhibits. Defendants took advantage of the hearing to have the ADC Medical Grievance Coordinator, Shelly Byers, appear in person and testify. Her testimony only strengthened Plaintiff's argument that he did everything possible and available to him under the system to timely file his grievance after his surgery, and to timely appeal and complete the grievance process. If Defendants had further evidence or testimony to proffer, it should have been produced. The Court had more than adequate evidence to find that Plaintiff was entitled to exhaustion exceptions for his grievance. Accordingly, it does not appear that a second hearing on the topic of exhaustion would accomplish anything other than causing a further delay of this case which would not be in the interests of judicial economy.

### E.  Appointment of Counsel

The standard used in determining the necessity of requesting counsel to represent the litigant is whether both the litigant and the Court would benefit from the assistance of counsel. *See Eddington v. Missouri Dept. of Corrections*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds*, *Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). In considering Plaintiff's Motion, the Court will consider the following factors: the factual complexity of the issues; the ability of Plaintiff to investigate the facts; the existence of conflicting testimony; the ability of Plaintiff to present his claim; and, the complexity of the legal issues. *Id.*; s*ee also Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006); *Stevens v. Redwing*, 146 F.3d 538, 547 (8th Cir. 1998); *Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

Plaintiff has twice requested appointment of counsel in this case. (Docs. 54, 66) In his most recent request, he stated he had suffered a stroke, which inhibits his ability to speak and express himself clearly. He also stated he was taking medication which "clouds his ability to concentrate, to reason, and to take on the adversary without the assistance of competent counsel." (Doc. 66) This

24

second  Motion was  filed several days prior to the summary judgement hearing on October 28, 2015. The Court, therefore, made the decision to question Plaintiff on this topic at the hearing. Defendants filed a Response to this Request after the hearing. (Doc. 70)

At the hearing, Plaintiff appeared to have considerable difficulty "tracking" the discussion and speaking. His speaking was slow, there were frequent pauses, and he lost his train of thought or stated that he could not remember something several times. He testified that he could understand the Court, but was "slow to process and get it back out." He appeared quite physically weak, and testified by video while seated in a wheelchair. He testified that he was taking significant pain medications including morphine, hydrocontin,[3] and phenergan. Plaintiff's mental and physical difficulties did not appear to be feigned or exaggerated in any way.

After the hearing, Defendants submitted Plaintiff's recent medical and prescription drug records. (Doc. 69) A review of these records show Plaintiff is "frail and fragile," needing help with his activities of daily living ("ADL's"). He is being treated with  "palliative comfort care" for end-stage colon and rectal cancer. His medication for pain includes fentanyl patches, with intravenous morphine every two hours as needed, and oxycontin as needed for breakthrough pain. All three of these medications are opioid analgesics, which are central nervous system depressants, acting on opioid receptors in the brain and spinal cord.[4]

Thus, Plaintiff's medical records reflect a terminal cancer patient in palliative end-of-life hospice care. These records indicate he is taking significant amounts of mind-altering pain

---

[3] It is not clear at this point if Plaintiff meant oxycontin, hydrocodone, or both medications.

[4] See e.g. www.pdr.net for each drug.

medication. He is also unable to care for himself, needing aid for basic ADL's. It appears to the Court that Plaintiff is no longer able to present his claims without assistance. Further, the Court would benefit from being able to interact with an attorney for this Plaintiff. Under these circumstances, it is appropriate to grant Plaintiff's request for an attorney appointment.

## IV.    CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (Doc. 43) be DENIED.  I further recommend that Plaintiff's Motion for Appointment of Counsel (Doc. 66) be GRANTED.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district Court.**

**DATED this 17th day of December, 2015.**

/s/   *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

26